UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lisandro Muniz

    v.                                    Civil No. 16-cv-303-LM
                                              Opinion No. 2017 DNH 195
Nancy A. Berryhill, Acting
Commissioner of Social Security[1]


**O R D E R**

    Lisandro Muniz seeks judicial review, pursuant to 42 U.S.C.
§ 405(g), of the decision of the Acting Commissioner of the
Social Security Administration, denying his application for
disability insurance benefits under Title II of the Social
Security Act.  Because the Administrative Law Judge ("ALJ")
failed to properly consider opinion evidence and improperly
relied on his own interpretation of the medical record, the
court remands the case to the Social Security Administration.


**Standard of Review**

    In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found

---

[1] The complaint names as defendant "U.S., Social Security
Administration, Commissioner."  After plaintiff filed her
complaint, Nancy A. Berryhill became Acting Commissioner of the
Social Security Administration on January 23, 2017, replacing
Carolyn W. Colvin, and Berryhill is automatically substituted as
the defendant.  See Fed. R. Civ. P. 25(d).

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.[2] Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

## Background

Muniz filed an application for social security benefits, alleging disability beginning in July 2010 because of back pain, hepatitis C, depression, anxiety, insomnia, acid reflux, GERD, sciatica, and thyroid problems.  A hearing was held before ALJ

---

[2] The first four steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether he has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and hia ability to do past relevant work.  20 C.F.R. § 404.1520(a).

Thomas Merrill in September 2012.  In a decision issued later that month, the ALJ found at Step Two of the sequential analysis that Muniz did not have a severe impairment and, therefore, was not disabled.

The Appeals Council directed the ALJ to reconsider evidence of whether Muniz had a severe impairment at Step Two.  In response, a second hearing was held before ALJ Merrill.  The ALJ again found at Step Two that Muniz did not have a severe impairment and was not disabled.  This time, the Appeals Council denied review.

The medical records begin in February 2010 when Muniz was diagnosed with hepatitis, and was also examined and treated for back pain.  In July 2010, Muniz was also treated for depression, and medical records show that he was taking Methadone at the time, but taking more than he was prescribed.  Muniz continued to seek treatment for depression throughout 2010.

An MRI done in July 2010 showed disc bulge that was greatest at L5-S1 with mild to moderate narrowing of the left neural foramen but without compression of the nerve root.  After the MRI, Muniz began treatment with the Orthopedic Professional Association clinic, and Dr. Anthony Salerni recommended epidural steroid injections and physical therapy.  In August, Muniz began treatment at the Interventional Spine Medicine clinic with Dr. Slezak for low back pain.  Dr. Slezak administered steroid

injections, but the clinic discontinued Muniz's treatment in early 2011.

In March 2011, Muniz sought care for back pain at the PainCare clinic. Nurse Greg Aprilliano at the PainCare clinic noted that Muniz reported taking 10 100 milligram tablets of Methadone each day and also noted that Muniz's complaints of pain exceeded the reported pathology in his back. Muniz's doctors recommended that he wean from Methadone. The PainCare clinic stopped prescribing pain medications and subsequently cancelled Muniz's treatment because he tried to "double dip" on his prescription.

In June 2011, a state medical consultant, Dr. MacEachran, completed a physical residual functional capacity assessment of Muniz. He found that Muniz was limited to lifting no more than 10 pounds occasionally, standing and walking for no more than two to three hours in a day, sitting for no more than six hours, and only occasional postural activities. A psychological evaluation of Muniz found that he had no severe mental health impairments.

Beginning in May 2012, Muniz received treatment for ongoing depression and anxiety at Genesis Behavioral Health. In June 2012, Muniz began primary care treatment with Dr. Kelly Seichepine, complaining of back pain. Dr. Seichepine noted that Muniz was having trouble taking medication as prescribed.

In September 2012, Dr. Seichepine completed a physical medical source statement, based on her treatment of Muniz since June 2011 and the MRI done in 2010. Dr. Seichepine found that Muniz could lift 10 pounds occasionally, could reach for only 20 percent of the day, could not stay on task for more than 75 percent of the day, could sit for no more than an hour, could stand for 30 minutes, would need unscheduled breaks, and would be absent at least four days each month.

Also in September 2012, Helena Greaney, APRN, completed a psychiatric assessment of Muniz for purposes of benefits under Financial Assistance for Needy Families. Greaney found that Muniz was incapacitated by mental health problems.

Muniz continued mental health therapy and also continued treatment with Dr. Seichepine in 2013. Dr. Seichepine ordered a new MRI in June 2013. A lumbar MRI was done in July 2013. The radiologist noted that the MRI showed annual bulging of the disc extending into the left side with moderate forminal stenosis and crowding of the L5 nerve root. He also noted degenerative disc disease at L2-3 with disc extrusion.

In September 2013, Muniz saw Dr. Tanya Vanderlinde at Concord Hospital for back pain, and saw Dr. Adam Cugalj at the New Hampshire Institute for back pain in October. Dr. Cugalj diagnosed bilateral L5 radiculitis with bilateral L5-S1

foraminal stenosis.  He provided manipulative therapy and a
steroid injection.

Muniz continued treatment with Dr. Seichepine in 2014 and
had increased back pain.  A lumbar x-ray showed slight interval
progression of degenerative disc disease.  Muniz also continued
treatment for depression in 2014.

### Discussion

Muniz contends that the ALJ's decision must be reversed
because the ALJ failed to consider the opinions provided by Dr.
Seichepine and APRN Greaney, improperly relied on his own
interpretation of the medical evidence in finding no severe
impairment at Step Two, and failed to evaluate properly Muniz's
impairments.  Muniz also contends that substantial evidence
supports a finding that he has severe mental health impairments.

The Acting Commissioner argues that the ALJ's failure to
discuss the opinions of Dr. Seichepine and APRN Greaney is
harmless, that the ALJ's failure to adopt Dr. MacEachern's
opinion is harmless, and that the ALJ made an appropriate common
sense evaluation of Muniz's limitations.  The Acting
Commissioner also argues that the ALJ was not obligated to
discuss all factors for the Step Two finding, and that the ALJ
properly considered the mental health evidence.

The Acting Commissioner emphasizes the impact of what she interprets as Muniz's drug-seeking behavior on the opinions provided in the record. For example, the Acting Commissioner contends that Dr. Seichepine's opinion is of little value because Dr. Seichepine was not aware of that behavior when she wrote her evaluation in June 2012. Similarly, the Acting Commissioner argues that substantial evidence supports the ALJ's Step Two determination because the record supports the conclusion that Muniz's drug-seeking behavior played a significant role in his reported symptoms.

The Acting Commissioner, however, acknowledges that the ALJ did not discuss Dr. Seichepine's or APRN Greaney's opinions or weigh those opinions based on the issues the Acting Commissioner now raises. The Acting Commissioner also acknowledges that the ALJ rejected Dr. MacEachern's opinion that Muniz was limited in his functional capacity because of back pain, noting in conclusory fashion that the record does not support that opinion. As a result, the ALJ relied on his own assessment of the record evidence, without any medical opinion. The Acting Commissioner contends that the ALJ's analysis was acceptable in this case. The court disagrees.

An ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35. Under the social security regulations

the ALJ must evaluate "every medical opinion" that a claimant submits, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). Accordingly, an ALJ "must explain in the decision the weight given to . . . any opinions from treating sources, nontreating sources, and other nonexamining sources . . . ." § 404.1527(e)(2)(ii). Ordinarily, therefore, an ALJ's failure to consider a medical opinion in the record is legal error that requires remand. See Rosado v. Sec'y of Health and Human Servs., 807 F.2d 292, 293 (1st Cir. 1986); Pierce v. Colvin, No. CV 15-13596, 2017 WL 1129939, at *12 (D. Mass. Mar. 24, 2017).

Although there are certain "limited exceptions" to this rule, such as that "an ALJ need not address specific evidence in the record that either does not support the claimant's position or simply repeats other evidence that the ALJ's does not consider," Grenier v. Colvin, No. 14-cv-153-PB, 2015 WL 5095899, at *2 (D.N.H. July 2, 2015), those exceptions are not present here. The opinion evidence ignored by the ALJ supports Muniz's position and is not cumulative of other evidence the ALJ addresses in his decision. Therefore, the ALJ was required to consider the medical opinions mentioned above, and his failure to do so requires remand.

In light of the fact that the ALJ has reviewed Muniz's case twice, the court believes that this is a case where "a fresh look by another ALJ upon remand would be beneficial." Simpson

v. Colvin, 2 F. Supp. 3d 81, 93 (D. Mass. 2014) (internal quotation marks, citations, and alterations omitted) (directing the Commissioner to assign a new ALJ to a case in light of the ALJ having reviewed a case twice). Accordingly, the court directs the Acting Commissioner to assign a new ALJ to this case on remand.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 9) is granted. The Acting Commissioner's motion to affirm (document no. 13) is denied.

The case is remanded for further administrative proceedings pursuant to sentence four of § 405(g) in accordance with this order.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 15, 2017

cc:  Daniel W. McKenna, Esq.
     T. David Plourde, Esq.